WILSON (BOYD v.).  See Case No. 1,751.

---

## Case No. 17,794.

### WILSON v. BRINKMAN et al.

[2 N. B. R. 468 (Quarto, 149); 1 Chi. Leg. News, 193; 2 Am. Law T. Rep. Bankr. 65.][1]

District Court, E. D. Missouri. March Term, 1869.

BANKRUPTCY—INSOLVENT MERCHANT—UNLAWFUL PREFERENCES.

1. A merchant or trader who cannot pay his debts, in the ordinary course of his business, is insolvent.

2. A creditor who knows that his debtor cannot pay all his debts in the ordinary course of his business, has reasonable cause to believe his debtor to be insolvent, and will not be allowed to secure, by confessions of judgment and the levy of executions, any preference over other creditors, and the assignee in bankruptcy

---

[1] [Reprinted from 2 N. B. R. 468 (Quarto, 149), by permission. 2 Am. Law T. Rep. Bankr. 65, contains only a partial report.]

may recover the property seized and taken upon executions under such judgments, or the value thereof.

[Cited in Martin v. Toof, Case No. 9,167; Goodenow v. Milliken, Id. 5,535; Haskell v. Ingalls, Id. 6,193; Strain v. Gourdin, Id. 13,521.]

A petition was filed by creditors against August Brinkman, of Cape Girardeau, alleging several acts of bankruptcy, by the confession of judgment to several creditors with a view of giving them a preference, and by procuring and suffering his goods to be taken in execution with a view of giving a preference. At the hearing of the rule to show cause, these charges of acts of bankruptcy were withdrawn, and the act charged that he, August Brinkman, being a merchant and trader, had fraudulently suspended payment of his commercial paper and had not resumed within fourteen days. This charge was confessed and the party adjudged a bankrupt, and the plaintiff was subsequently appointed assignee. The assignee after his appointment filed his bill in chancery against the defendants, alleging that on February 4th, 1868, the said August Brinkman, being insolvent, and in contemplation of insolvency and in contemplation of bankruptcy, he being then a resident of Cape Girardeau county, did, with a view of giving a preference to the defendants, Ernest Brinkman, Louis Stortz, and Fritz Johns, who were then creditors of said August Brinkman, and had good reason to believe him insolvent and to be acting in contemplation of bankruptcy and in contemplation of insolvency, go to Commerce, in Scott county, and there confessed judgments in favor of said Ernest for three thousand six hundred and forty dollars, of Fritz Johns for two hundred and sixty-two dollars and sixty-five cents, of said Louis Stortz for three hundred and ten dollars, and that on said several judgments executions were issued to the defendant, Herman Bader, who was then sheriff of Cape Girardeau county, and delivered to said sheriff, who on February 11, 1868, levied the said writs by seizing the stock of goods in the store of said August Brinkman in Cape Girardeau, together with the books, notes, and accounts, and also by levying the same upon certain real estate; that said sheriff sold the stock of goods for the sum of three thousand one hundred and nineteen dollars, on February, 1868, and sold said real estate for the sum of fifty dollars, and collected of said notes and accounts the sum of two hundred and seventy-seven dollars and twenty-five cents, making a total of three thousand four hundred and forty-six dollars and twenty-five cents; that said August Brinkman did thereby suffer and procure his goods and property to be seized on execution, with a view of giving a fraudulent preference to his said creditor, and with a view to prevent his property from coming to his assignee in bankruptcy and from being distributed under the provisions of the bankrupt act. The defendant Bader answered,

setting out the delivery to him of the writs fieri facias, and his proceedings thereunder, showing a balance in his hands after deducting costs and commissions, and submitting himself to the judgment of the court. The defendants, Ernest Brinkman, Stortz, and Johns, answered, setting forth that the debts for which said judgments were confessed were honestly due them; denying that they had reason to believe that said August Brinkman was insolvent, or that he was acting in contemplation of insolvency or in fraud of the provisions of the act of congress [of 1867 (14 Stat. 517)], and denying that said judgments were voluntarily confessed by said August Brinkman, with a view of giving a fraudulent preference; and alleging that August Brinkman was induced to give said confessions of judgment by the earnest solicitations of the defendants, and by the operating upon his fears, and thus inducing him to go to Commerce with them and to confess said judgments, and claiming that they, by thus procuring said judgments and causing said executions to be levied, had exercised only their legal rights in the premises.

To this answer the plaintiffs filed a replication, and the case was heard upon bill, answer, replication, and proofs. Depositions were taken upon both sides. The evidence showed that the judgments were confessed by August Brinkman by his appearing in person before the Scott circuit court, and authorizing judgments to be entered upon notes given by him immediately before the date of the judgments for debts then due by him, in good faith and for a good consideration; that said August Brinkman was in fact insolvent and unable to pay his debts in the ordinary course of his business; that he was hard pressed by some of his St. Louis creditors, and that attachments had been threatened and even issued, but not levied, for fear there was not sufficient ground to sustain them. The testimony offered by the plaintiff tended to show that August Brinkman well knew his condition, as did also his judgment creditors, and that he was determined to take care of his friends; and that in going to Scott county he was not influenced by fear of any of the parties in favor of whom he confessed the judgment. The testimony offered by the defendants tended to show that in confessing the judgments, he was influenced by the pressure and urgent solicitations of the judgment creditors; that the attorney of the creditors sent for him to come down to Commerce, and induced him to confess said judgments, and that said confessions were obtained by the pressure brought to bear upon him, and were not voluntary upon his part.

Jones & Davis, for complainants, cited Black & Secor's Case [Case No. 1,457], and Craft's Case [Id. 3,316].

C. C. Whittlesey and Lewis Brown, for respondents, cited 5 Johns. Ch. 428; Thompson v. Freeman, 1 Term. R. 155; Smith v. Payne, 6 Term. R. 152; Swope, Levy & Co. v. Arnold [Case No. 13,702]; and In re Kerr [Id. 7,728].

TREAT, District Judge. Upon a review of the facts of the case, without going through all the testimony presented, it is sufficient to say that it appears that August Brinkman knew that he was insolvent, and unable to pay all his debts, and, being hard pressed by some of his creditors, he determined to take care of his friends, who procured the executions to be issued with the purpose of getting ahead of the other creditors. The evidence really presents a case of a confederation between a debtor in failing circumstances and some of his creditors, by which the debtor confessed judgments with the intention of giving a preference to some, over the other, creditors. It is claimed by the respondents that the confessions of judgment were procured by their urgent solicitations, and by a pressure brought to bear upon the debtor, and by appealing to his fears, so that the confessions were not voluntary upon his part, but extorted from him by a kind of duress. The evidence shows no such case, but presents one of a purpose formed to accomplish what the bankrupt act forbids. Under the present act there is no discrimination between cases of voluntary or involuntary preference. This matter has been well considered in the decision lately made by the United States district court in Michigan, in the case of Foster v. Hackley [Case No. 4,971], which discusses fully the provisions of sections thirty-six and thirty-nine of the act, and concludes that where the creditor has reasonable cause to believe that the act done was in fraud of the bankrupt act, or that there was an intention to prevent the property of the bankrupt from being equally distributed, that a fraud is worked, and the operation of the act is impeded; and that a conveyance of all his property by a debtor to one creditor, or set of creditors, is evidence of such intention; for if the transaction will, in fact, impede the operation of the statute, the parties must be supposed to know the consequence of their acts.

It is immaterial whether the confessions of judgments were voluntary or involuntary, and procured by pressure upon the debtor, and as the judgment creditors sought to procure a preference over other creditors, the assignee may proceed to recover the property which has been seized and sold by the sheriff under the executions issued upon these judgments. It is claimed that the preference thus supposed to be obtained was not a voluntary preference given by the debtor, but was obtained from the debtor by operating upon his fears, and that the presence of the prosecuting attorney, who was also the attorney of the creditors, operated to produce such fears. But the attorney tells us that when he saw the bankrupt he assured him that there was no danger; and it is apparent from the evidence that, whatever threats may have been made, they did not proceed from these judgment

creditors; and then the bankrupt proceeded to do an act which exposed him to penalties provided in the act. A trader is insolvent when he cannot pay his debts in the ordinary course of trade and business. Here was a debtor in failing circumstances, against whom attachments had been issued, who enters into a contrivance to defeat the attachments and the impending levy thereof. The whole proceeding was fraudulent and void under the provisions of the statute. A decree will be entered for the value of the property sold by the sheriff; and as no evidence is presented of such value, except the amount of the sales made by him, the decree will be for the gross amount of the sales as returned in his answer, and the judgment creditors must be left to pay the costs of their own suits. The court, upon the statement of the counsel for the parties, that the suit had been conducted by a sort of amicable arrangement, for the purpose of fairly testing the questions of law, so far modified its decree as to adjudge the sheriff to pay over to the assignee the net instead of the gross amount of sales.